# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **HOSEA KARANJA, TIMOTHY DYER, JOHN NJOROGE, WILFRED CHEGE, STEVEN STANIN, PETER NJENGA, PETER THAGICU, DIANA MERCADO, RICHARD RICHU, DAVID GIATHI, DINAMENE BRANDAO and HANNAH KIARIE, individually and on behalf of all others similarly situated,**<br>        **Plaintiffs,**<br><br>**v.**<br><br>**STRATEGIC DELIVERY SOLUTIONS, LLC and SUBCONTRACTING CONCEPTS, LLC,**<br>        **Defendants.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **C.A. No.:  15-40041-TSH**<br>**(Leave to File Granted on October 3, 2018)** |

## SECOND AMENDED COMPLAINT, PROPOSED CLASS ACTION AND JURY DEMAND

## I.    INTRODUCTION

1.    This is an action advanced on behalf of plaintiffs Hosea Karanja (hereafter "Karanja"), Timothy Dyer (hereafter "Dyer"), John Njoroge (hereafter "Njoroge"), Wilfred Chege (hereafter "Chege"), Steven Stanin (hereafter "Stanin"), Peter Njenga (hereafter "Njenga"), Peter Thagicu (hereafter "Thagicu"), Diana Mercado (hereafter "Mercado"), Richard Richu (hereafter "Richu"), David Giathi (hereafter "Giathi"), Dinamene Brandao (hereafter "Brandao") and Hannah Kiarie (hereafter "Kiarie") (hereafter collectively "the plaintiffs"), as well as on behalf of other similarly situated individuals (hereafter collectively "the class

1

members"), arising out of their past performance of delivery and/or courier services for defendant Strategic Delivery Solutions, LLC (hereafter "SDS").  Specifically, SDS misclassified the plaintiffs and the class members as independent contractors when, pursuant to Massachusetts law, the plaintiffs and the class members were employees and SDS was required to treat them as such.  As a consequence of the illegal misclassification, SDS deprived the plaintiffs and the class members of overtime wages and other work-related benefits, and also caused the plaintiffs and class members to incur expenses and fees that the plaintiffs and the class members should not have been obligated to incur.  Such conduct by SDS violated the Massachusetts Independent Contractor Statute, as well as other Massachusetts statutory authorities and its common law.

2.     As will be explained below, Subcontracting Concepts, LLC (hereafter "SCI"), knowingly and intentionally aided, abetted and conspired with SDS in the misclassification of the plaintiffs and the class members as independent contractors.  The assistance of SCI in this joint venture was substantial and to the detriment of the plaintiffs and the class members, rendering SCI jointly liable for the harms visited upon the plaintiffs and the class members.  In addition, SCI's conduct over the course of time and within the business context constituted unfair and deceptive acts and practices, in violation of G.L. c. 93A, subject to class certification and redress through G.L. c. 93A, § 11.

3.     SDS and SCI also unlawfully deducted charges and fees from the paychecks of the plaintiffs and the class members for items, such as worker's compensation, liability insurance and administrative fees, that the plaintiffs and the class members should not have been obligated to pay, forcing these employees to bear the costs of SDS and SCI doing business.

4.     As a result of the actionable misconduct of SDS and SCI, the plaintiffs, for themselves and on behalf of the class members, seek damages for the various statutory violations

and other compensable harms, including restitution, statutory trebling of wage-related damages, attorneys' fees and costs.

## II.  PARTIES

5.      Karanja is a natural individual and resident of Dracut, Massachusetts.  Beginning in August, 2009, and continuing into 2013, Karanja performed courier and delivery services for SDS and SCI, with a route that included points from the South Shore to Cape Cod, including as well delivery and courier services in Worcester County.

6.      Dyer is a natural individual and resident of Westford, Massachusetts.  Beginning in August, 2009 and continuing until April, 2013, Dyer performed courier and delivery services for SDS and SCI, with a route that extended from Middlesex County to Worcester County.

7.      Njoroge is a natural individual and resident of Dracut, Massachusetts.  Beginning in August, 2009 and continuing for years thereafter, Njoroge performed courier and delivery services for SDS and SCI, with a route that extended from Middlesex County to Worcester County.

8.      Chege is a natural individual and resident of Hudson, New Hampshire.  Beginning in 2011 and continuing for years thereafter, Chege performed courier and delivery services for SDS and SCI, with a route that extended from Essex County to locations in New Hampshire.

9.      Stanin is a natural individual and resident of Salem, New Hampshire.  Beginning in 2011 and continuing for years thereafter, Stanin performed courier and delivery services for SDS and SCI, with a route that extended from Essex County to locations in New Hampshire.

10.     Njenga is a natural individual and resident of Haverhill, Massachusetts. Beginning in 2011 and continuing for years thereafter, Njenga performed courier and delivery

services for SDS and SCI, with a route that extended through Worcester, Suffolk, Middlesex and Barnstable Counties.

11.     Thagicu is a natural individual and resident of Brockton, Massachusetts. Beginning in 2012, Thagicu performed courier and delivery services for SDS and SCI, with a route that extended through various locations within the Commonwealth of Massachusetts.

12.     Mercado is a natural individual and resident of Lawrence, Massachusetts. Beginning in 2011 and continuing for years thereafter, Mercado performed courier and delivery services for SDS and SCI, with a route that extended through various locations within the Commonwealth of Massachusetts and within Suffolk County.

13.     Richu is a natural individual and resident of Quincy, Massachusetts.  Beginning in 2011 and continuing for years thereafter, Richu performed courier and delivery services for SDS and SCI, with a route that extended from Bristol County to Plymouth County.

14.     Giathi is a natural individual and resident of Brockton, Massachusetts.  Beginning in 2011, Giathi performed courier and delivery services for SDS and SCI, with a route that extended through various locations within the Commonwealth of Massachusetts and within Suffolk County.

15.     Brandao is a natural individual and resident of Dorchester, Massachusetts. Beginning in 2011 and continuing for years thereafter, Brandao performed courier and delivery services for SDS and SCI, with a route that extended from Suffolk County to Norfolk County.

16.     Kiarie is a natural individual and resident of Dracut, Massachusetts.  Beginning in 2011, Kiarie performed courier and delivery services for SDS and SCI, with a route that extended through various locations within the Commonwealth of Massachusetts and within Barnstable County.

4

17.     SDS is a foreign corporation with a principal place of business situated at 1815 C Broadhollow Road, Farmingdale, New York 11735.  The registered Resident Agent for SDS is CT Corporation System, located at 155 Federal Street, Suite 700, Boston, Massachusetts 02110. SDS has conducted substantial business within the Commonwealth of Massachusetts and specifically within Worcester County.

18.     SCI is a foreign corporation incorporated in Delaware and with a usual place of business in New York.  The New York Registered Agent for SCI is CT Corporation System, 111 Eight Avenue, New York, New York 10011.  SCI has conducted substantial business within the Commonwealth of Massachusetts and specifically within Worcester County.

## III.     CLASS ACTION ALLEGATIONS

19.     The plaintiffs seek to bring this action not only on their own behalves but also as a class action on behalf of all others similarly situated.  More particularly, the plaintiffs propose a class action on behalf of all individuals who have engaged in the performance of delivery and/or courier services for SDS, its parent organization(s), successors or assigns, who have been subjected to the misconduct described within this pleading.  Further, and on behalf of the same class of individuals, the plaintiffs propose a class action against SCI for its role in the misconduct described within this pleading, including to seek redress for SCI's violations of G.L. c. 93A.

20.     The proposed class action satisfies the requirements imposed by Rule 23 of the Massachusetts Rules of Civil Procedure.

21.     The plaintiffs are members of the class that they seek to represent.

22.     The proposed class is readily definable.  Additional members of the class can be identified by records that would be maintained by SDS and/or SCI in the normal course of their businesses and those individuals will be able to receive notice(s) related to this action through

direct mailings to addresses discoverable through review of the business records of SDS and/or SCI.

23.     A class action is advisable in that the members of the class are so numerous that joinder of all members would be impracticable.  Upon information and belief, SDS and SCI have employed at least several dozen individuals to provide delivery and/or courier services throughout the Commonwealth of Massachusetts.

24.     The actions of SDS and SCI that form the basis for this litigation were materially identical toward and among the named plaintiffs and similarly were materially identical toward and among the class members.  There thus exists a well-defined community of interest between and among the plaintiffs and the class members.  Individual questions, if there even are any, would pale in comparison to the multiplicity of legal and factual questions that would dominate and control this Court's analysis of the claims against SDS and SCI, including the most important of questions as to SDS and SCI's improper classification of the plaintiffs and class members as independent contractors in violation of Massachusetts law and SCI's unfair and deceptive business acts and practices in violation of G.L. c. 93A.

25.     The claims of the plaintiffs are typical of the claims of the class members.  All were similarly-situated employees with the same job description, including performing the same work under the same conditions, all were misclassified as independent contractors and, as a result, all were denied the same benefits and suffered the same types of harm.  The actions of SDS and SCI were premised upon systemic policies and practices that were generally applicable not only to the plaintiffs, but also to the class members.  As a consequence, the plaintiffs are personally familiar with the factual predicate that forms the basis for the claims of the class members.

26.     The interests of the class members will be protected fairly and adequately by the plaintiffs, and there are no apparent conflicts of interest among the plaintiffs and the class members.  The interests of the plaintiffs are coincident with, and not antagonistic toward, the interests of the class members.

27.     The plaintiffs have retained competent and experienced litigation counsel to prosecute this action vigorously; that counsel also will fairly and adequately protect the interests of the class members.

28.     Permitting this litigation to be maintained as a class action will provide all concerned, including the parties and this Court, with a fair and efficient method by which to adjudicate the issues presented.

29.     Common questions of law and fact here predominate over any questions affecting only individual members of the class, as the plaintiffs and the class members, cast broadly, would seek to adjudicate a shared legal grievance, namely, for example, misclassification and unfair and deceptive business practices, and to remedy a shared harm, namely, for example, unpaid wages and lost employment benefits.  The legal and factual issues related to liability and damages are materially identical for the named plaintiffs and the class members.

30.     A class action would be superior to other available methods to adjudicate the claims against SDS and SCI.  In fact, to direct that the individual class members prosecute their own actions separately would not only cause delay that could be avoided easily, but would involve substantial multiplication of efforts that would drain and waste litigation and judicial resources, potentially involving the filing and prosecution of dozens of separate actions in various fora.  Additionally, because the damage suffered by any individual class member could

be relatively small, the expenses and burdens of individualized litigation could well inhibit on a practical level the ability of harmed class members to seek appropriate redress for those harms.

31.     Separate actions also could lead to inconsistent rulings and incompatible standards of conduct for SDS and SCI, which inherently would be unjust, unworkable and unwise.  Moreover, through preclusion or like principles, separate individualized actions could affect the rights and interests of other class members who were not parties to those individualized actions.

32.     In contrast, a class action would allow for the efficient and expeditious prosecution of these analytically similar claims, with appropriate and uniform supervision by this Court resulting in a desirable manner of prompt adjudication for the claims presented.

## IV.     JURISDICTION AND VENUE

33.     This Court has been conferred with jurisdiction over this action pursuant to 28 U.S.C. § 1332, which provides this Court with jurisdiction in diversity actions where the matter in controversy exceeds the sum or value of $75,000.00.

34.     The Worcester Division of the United States District Court is an appropriate and convenient venue for this action insofar as SDS and SCI transacted business throughout the Commonwealth of Massachusetts, including within Worcester County, where a number of plaintiffs, as well as other class members, also discharged their duties for SDS and SCI.

## V.     FACTS

35.     At all relevant times, the business of SDS in Massachusetts included the delivery of pharmaceutical products to pharmacies and other healthcare facilities throughout the Commonwealth of Massachusetts.

36.     To accomplish that business purpose, SDS employed individuals, including the plaintiffs as well as the class members, as couriers/drivers.

37.     As a condition of employment, SDS required the plaintiffs and the class members to sign independent contractor agreements that were drafted and provided by SCI.  The plaintiffs and the class members, if employment was to be had, were provided with no choice but to accept the terms demanded jointly by SDS and SCI and were coerced into the relationships that SDS and SCI knew were misclassifications pursuant to Massachusetts law.

38.     Those agreements provided by SCI, and the directive of SDS that the agreements be executed, were substantially responsible for the illegal misclassification of the plaintiffs and the class members as well as the deprivation of the rights of the plaintiffs and the class members as employees.

39.     SCI knew that the conduct of SDS was in violation of Massachusetts law and nevertheless SCI offered substantial assistance to SDS in order to accomplish the violations visited upon the plaintiffs and the class members.

40.     SCI aided and abetted SDS in the misclassification scheme and further aided and abetted SDS in the violation of the rights of the plaintiffs and class members, all of which caused harm to the plaintiffs and the class members.  That joint venture not only took the form of SCI's role in the creation and dissemination of the improper independent contractor agreements, but also, on a then going forward basis, a continuing and active role in the implementation and administration of the employment relationships for the plaintiffs and the class members, including regular and sustained illegal deductions taken from the paychecks of the plaintiffs and the class members.  Those activities of SCI were conducted within the business context and were included in its normal course of business operations, which involved the preparation and

9

dissemination of independent contractor agreements and serving as a collection agent responsible for processing payments to misclassified employees and subtracting from those payments, including those made to the plaintiffs and the class members, illegal deductions.

41.     SDS and SCI acted jointly, and in a knowing and willful fashion, in a concerted effort to deprive the plaintiffs and the class members of their protected rights.

42.     Once hired, the plaintiffs and the class members were required to report to a SDS terminal in Methuen, Massachusetts in the early morning hours from 3 a.m. to 5:30 a.m.

43.     Upon arrival, the plaintiffs and the class members were directed to scan, sort and load totes containing merchandise into their own personal vehicles.

44.     That process, including completion of paperwork, could take in excess of one hour each day.  The plaintiffs and the class members were not compensated for that time and that work.

45.     Moreover, on a regular basis the totes that the plaintiffs and the class members were to deliver were not ready, causing the plaintiffs and the class members to wait, sometimes for extended periods of well more than an hour, until the totes were ready.  The plaintiffs and the class members were not compensated for that time.

46.     The plaintiffs and the class members were assigned a specific route and provided a manifest with specific delivery locations.  Deliveries generally were to be made in a specific order as presented on the manifest and within an allotted amount of time.

47.     Upon arrival at a particular delivery location, the plaintiffs and the class members were required to scan the merchandise and obtain signature(s) from customer(s) on the manifest sheet reflecting the delivery.

48.     The plaintiffs and the class members were required to purchase a scanner that would be used to scan the merchandise upon loading and scan the merchandise again upon delivery.  The costs of the scanners were deducted from the paychecks of the plaintiffs and the class members.

49.     Although the plaintiffs and the class members were paid on a per stop basis, so-called special deliveries routinely were assigned to the plaintiffs and the class members to conduct.  The plaintiffs and the class members were required to conduct such deliveries with no compensation.

50.     In addition, the plaintiffs and the class members also were required at times to pick up returned merchandise from customers of SDS and return them to the Methuen terminal; while the customers were charged by SDS for the returns, the plaintiffs and the class members received no compensation for those imposed duties.

51.     After the tasks associated with the route deliveries, as well as any special deliveries or returns, were completed each day, the plaintiffs and the class members were required to return to the Methuen terminal with the delivery totes and any returned items.  The plaintiffs and the class members then were required to download the information contained on their scanners into the SDS computer system.

52.     The plaintiffs and the class members were not compensated for that time and that work.

53.     Quite frequently, and for some always, plaintiffs and the class members worked in excess of forty hours per week, including weeks of fifty, sixty or eighty hours.  The plaintiffs and the class members never were paid overtime wages for such work in excess of forty hours.

54.     For some plaintiffs and class members, they also were "on call" and requested to make deliveries outside of their normal routes and hours of work.

55.     As a requirement of their positions, the plaintiffs and the class members were forced to use their own personal vehicles for deliveries and associated duties, and also were required to pay for their own gasoline, automobile insurance, maintenance and tolls.

56.     The plaintiffs and the class members also were required to pay for their own workers' compensation and liability insurance.

57.     In addition to paying for the scanner itself, the plaintiffs and the class members were required to pay a fee for the use of the scanner.

58.     The plaintiffs and the class members were required to pay, through unlawful deductions in their paychecks, myriad fees and costs, including scanner fees, administration fees, airtime fees, cargo waiver fees, onboard fees, program fees and postage costs.

59.     In addition, if property was damaged, the plaintiffs and the class members were required to pay for the cost of such damage at an amount determined by SDS and SCI.

60.     The plaintiffs and the class members thus were required to bear business expenses of SDS and SCI that never should have been assessed against the plaintiffs and class members.

61.     Although SDS and SCI classified the plaintiffs and the class members as independent contractors, the nature of the relationship, the services provided by the plaintiffs and the class members and the manner in which those services are provided, demonstrate that, pursuant to Massachusetts law, the plaintiffs and the class members were employees and were misclassified as independent contractors.

62.     SDS exerted control and direction over the plaintiffs and the class members with respect to the performance of the pickup and delivery tasks earlier described.

12

63.     Specifically, control and direction included, but was not limited to:

a.      the plaintiffs and the class members were required to comply with SDS instructions in the form of written and unwritten policies, procedures and directives concerning the duties of the plaintiffs and the class members;

b.      SDS employed managers who exerted supervisory authority over the plaintiffs and the class members and who were able to assign and direct work;

c.      the plaintiffs and the class members also would receive direction from SDS dispatchers who would make contact from the terminal on various matters to be addressed, such as a return pickup, by the plaintiffs and the class members;

d.      the plaintiffs and the class members were required to perform their work during fixed hours of the day and were in some instances directed where and when to make deliveries for a particular customer;

e.      SDS required the plaintiffs and the class members to use its scanning and radio devices so that its merchandise could be tracked and the information downloaded to the SDS computer system;

f.      the plaintiffs and the class members were provided no role in supervising any other driver; and,

g.      the plaintiffs and the class members were required to purchase and to wear a uniform with a SDS Rx logo on it.

64.     The business of SDS was to supply courier/delivery services to its customers and the plaintiffs and the class members, through the earlier described processes of pickup and delivery, accomplished those tasks on behalf and for the benefit of SDS.

65.     The plaintiffs and the class members were entirely dependent upon SDS for work, as they were employed full-time in the tasks earlier described and were not engaged in an independently established occupation apart from that work for SDS at all relevant times.

66.     SCI, knowingly and intentionally, and working in conjunction with SDS at all times, engaged in the taking of unlawful deductions from the paychecks of the plaintiffs and the class members including, but not limited to, administrative fees, program fees, supply fees and fees associated with payments for workers' compensation and liability insurance.

67.     Over the course of numerous commercial transactions involving the plaintiffs and the class members in the business context, SDS submitted payments for services rendered by the plaintiffs and class members to SCI.  SCI served, as was its normal business operation, as a collection agent that would collect those payments and then deduct various improper fees and costs before finally remitting payments to the plaintiffs and the class members.

68.     Numerous of the plaintiffs and class members have sought, and have obtained, permission from the Office of the Attorney General for the Commonwealth of Massachusetts to maintain a private right of action.

69.     The Office of the Attorney General having been made aware of the matter involving SDS and SCI, and having permitted private rights of action for a number of the individuals involved, all of the plaintiffs and the class members now are able to maintain private causes of action against SDS and SCI.

## VI.    CAUSES OF ACTION

### COUNT I
DECLARATORY JUDGMENT
G.L. c. 231, §1A
Against SDS and SCI

70.    All previous and subsequent paragraphs of this complaint are incorporated here by reference.

71.    An actual controversy has arisen with respect to the misclassification of the plaintiffs and the class members as independent contractors by SDS and SCI.

72.    Pursuant to Massachusetts law, and in particular G.L. c. 149, §148B, the Massachusetts Independent Contractor Statute, the plaintiffs and the class members were not independent contractors, but actually were employees.

73.    As a result of the actions of SDS and SCI relative to their misclassification, the plaintiffs and the class members suffered harm to their rights, were not paid as they should have been and were forced to incur fees, costs and liabilities that were not their responsibility.

74.    The plaintiffs and the class members are entitled to a declaratory judgment establishing that the plaintiffs and the class members were employees under Massachusetts law and were misclassified by SDS and SCI as independent contractors.

### COUNT II
VIOLATION OF THE MASSACHUSETTS INDEPENDENT CONTRACTOR STATUTE,
G.L. c. 149, § 148B
Against SDS and SCI

75.    All previous and subsequent paragraphs of this complaint are incorporated here by reference.

76.    The actions of SDS and SCI as set forth constitute violations of the Massachusetts Independent Contractor Statute, codified at G.L.  c. 149, § 148B.

15

77.     As a result of the actions of SDS and SCI, the plaintiffs and the class members were misclassified as independent contractors when, by law, they were employees.

78.     As a result of the actions of SDS and SCI, the plaintiffs and the class members suffered harm to their rights, were not paid as they should have been and were forced to incur fees, costs and liabilities that were not their responsibility.

79.     This claim is asserted pursuant to the provisions of G.L. c. 149, § 150.

80.     As a consequence of the actions of SDS and SCI, the plaintiffs and the class members seek their damages trebled for all lost wages and other benefits of which they were deprived, as well as their attorneys' fees and costs.

**COUNT III**
VIOLATION OF G.L. c. 149, § 148
Against SDS and SCI

81.     All previous and subsequent paragraphs of this complaint are incorporated here by reference.

82.     The actions of SDS and SCI as set forth reflect violations of G.L. c. 149, § 148 in that the plaintiffs and the class members were not paid pursuant to state law, had improper deductions taken from their pay, were not paid for all hours worked and were required improperly to bear the costs of SDS and SCI doing business.

83.     As a result of the actions of SDS and SCI, the plaintiffs and the class members suffered harm to their rights, were not paid as they should have been and were forced to incur fees, costs and liabilities that were not their responsibility.

84.     This claim is asserted pursuant to the provisions of G.L. c. 149, § 150.

85.     As a consequence of the actions of SDS and SCI, the plaintiffs and the class members seek their damages trebled for all lost wages and other benefits of which they were deprived, as well as their attorneys' fees and costs.

**COUNT IV**
VIOLATION OF THE MASSACHUSETTS OVERTIME LAW,
G.L. c. 151, § 1A
Against SDS

86.     All previous and subsequent paragraphs of this complaint are incorporated here by reference.

87.     The actions of SDS as set forth constitute violations of the Massachusetts Overtime Law, codified at G.L.  c. 151, § 1A.

88.     As a result of the actions of SDS, the plaintiffs and the class members were not paid overtime wages for their work performed for SDS in excess of forty hours per week.

89.     As a result of the actions of SDS and SCI, the plaintiffs and the class members suffered harm to their rights and were not paid as they should have been.

90.     This claim is asserted pursuant to the provisions of G.L. c. 151, § 1B.

91.     As a consequence of the actions of SDS, the plaintiffs and the class members seek their damages trebled for all lost wages and other benefits of which they were deprived, as well as their attorneys' fees and costs.

**COUNT V**
AIDING AND ABETTING VIOLATIONS OF THE MASSACHUSETTS WAGE LAW, G.L. c. 149, § 148 AND THE INDEPENDENT CONTRACTOR STATUTE, G.L. c. 149, §148B
Against SCI

92.     All previous and subsequent paragraphs of this complaint are incorporated here by reference.

93.     The actions of SCI as set forth reflect its unlawful aiding and abetting SDS in various of the violations of Massachusetts state law, including G.L. c. 149, § 148 and G.L. c. 149, § 148B.

94.     As a result of the actions of SCI which rendered substantial assistance to SDS, SDS was able to accomplish its violations of state law, all to the harm and detriment of the plaintiffs and the class members and their rights, as the plaintiffs and the class members were not paid as they should have been and were forced to incur fees, costs and liabilities that were not their responsibility.

95.     This claim is asserted pursuant to the common law as well as the provisions of G.L. c. 149, § 150.

96.     As a consequence of the actions of SCI, the plaintiffs and the class members seek their damages trebled for all lost wages and other benefits of which they were deprived, as well as their attorneys' fees and costs.

**COUNT VI**
VIOLATION OF G.L. c. 93A
Against SCI

97.     All previous and subsequent paragraphs of this complaint are incorporated here by reference.

98.     The actions of SCI as set forth were undertaken in the business context and involve commercial activities within the usual business operation of SCI.

99.     The actions of SCI as set forth were willful and knowing.

100.    The actions of SCI as set forth were undertaken in intentional disregard for Massachusetts law.

18

101.    The actions of SCI as set forth occurred primarily and substantially within the Commonwealth of Massachusetts.

102.    The actions of SCI as set forth were unfair and deceptive acts or practices in violation of G.L. c. 93A.

103.    A demand letter discussing these matters, pursuant to G.L. c. 93A, was issued on December 18, 2014.  SCI has tendered no response within the time period established by law.

104.    As a result of the actions of SCI, the plaintiffs and the class members suffered harm to their rights, were misclassified as independent contractors, were not paid as they should have been and were forced to incur fees, costs and liabilities that were not their responsibility.

105.    As a consequence of the actions of SCI, the plaintiffs and the class members seek their damages trebled, as well as their attorneys' fees and costs.

## VII.    PRAYERS FOR RELIEF

WHEREFORE, the plaintiffs request that this Court enter the following relief:

1.    that a class of all individuals who provided delivery/courier services to SDS and who were misclassified as independent contractors be certified;

2.    that an order enter that SDS and/or SCI are financially responsible for notification of the class members;

3.    that a declaratory judgment be entered reflecting that the plaintiffs and the class members were employees, not independent contractors;

4.    that judgment be entered against SDS and SCI as to each count of the complaint advanced against them;

5.    full restitution of all wages and overtime payments that are owed to the plaintiffs and the class members because of their misclassification as independent contractors; full

restitution for all other benefits of employment owed to the plaintiffs and the class members as to which they would have been entitled as employees, such as unemployment compensation; workers' compensation; payment for the employer's share of taxes; vacation and holiday pay; and improper deductions taken;

6.      full reimbursement be made for all work-related expenses and improper deductions taken by SDS and SCI;

7.      statutory trebling of all wage-related damages;

8.      statutory interest, both pre-judgment and post-judgment, at the maximum rates allowable by law;

9.      attorneys' fees and the costs reasonably incurred and expended in the necessary prosecution of this complaint; and,

10.     such additional or alternative relief as this Court may deem just and proper.

## **JURY DEMAND**

THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE

THE PLAINTIFFS
By their attorneys,

/s/ Andrew J. Gambaccini
John K. Vigliotti, BBO #:  642337
Andrew J. Gambaccini, BBO #:  654690
Reardon, Joyce & Akerson, P.C.
4 Lancaster Terrace
Worcester, Massachusetts 01609
508.754.7285
jvigliotti@rja-law.com
agambaccini@rja-law.com