UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HOSEA KARANJA, TIMOTHY DYER, JOHN NJOROGE, WILFRED CHEGE, STEVEN STANIN, PETER NJENGA, PETER THAGICU, DIANA MERCADO, RICHARD RICHU, DAVID GIATHI, DINAMENE BRANDAO and HANNAH KIARIE, individually and on behalf of all others similarly situated, <br>     Plaintiffs, <br><br> v. <br><br> STRATEGIC DELIVERY SOLUTIONS, LLC and SUBCONTRACTING CONCEPTS, LLC, <br>     Defendants. | C.A. No.: 15-40041-TSH |

**PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AS TO DEFENDANT STRATEGIC DELIVERY SOLUTIONS, LLC AND FOR LEAVE TO FILE A PETITION AS TO AN AWARD OF ATTORNEYS' FEES**

The plaintiffs respectfully request that this Court issue an Order enforcing the settlement agreement in this matter and directing that defendant Strategic Delivery Solutions, LLC ("SDS") comply immediately with the terms of the settlement, namely by making its required settlement payment, and that SDS also immediately provide counsel a copy of the agreement executed by its authorized representative. Appended hereto and designated as "Attachment A" is a placeholder for the settlement agreement, signed by all ten plaintiffs and a representative of Subcontracting Concepts, LLC ("SCI"); by way of a separately filed request, the plaintiffs are seeking leave to file that exhibit under seal with this Court, as it was intended to be a confidential

1

agreement among the parties.

Further, based upon a provision in the agreement that permits a party to recover legal fees should motion practice such as this be necessary, and otherwise based upon the inherent authority of this Court to issue an award of attorneys' fees in appropriate circumstances, the plaintiffs also seek leave to file a petition as to the plaintiffs' attorneys' fees incurred in connection with this motion practice, with that award to be paid by SDS. *See Goodyear Tire & Rubber Co. v. Haeger*, ___ U.S. ___, 137 S.Ct. 1178, 2017 U.S. LEXIS 2613 (2017).[1]

As the grounds for this request, the plaintiffs state:

**I.   BACKGROUND**

1. Following an hours-long mediation with Magistrate Judge Katherine Robertson on February 14, 2020, the parties in this matter reached agreement on the terms of a settlement.

2. At that time, evidenced on a sealed recording taken in the courtroom, Judge Robertson articulated various terms of the settlement and all of the plaintiffs, in addition to plaintiffs' counsel and defendants' counsel, expressed agreement with the terms announced.

3. Following the report of Judge Robertson that the matter had been settled, on February 19, 2020, this Court entered a sixty-day settlement order of dismissal.

4. On March 17, 2020, plaintiffs' counsel received a draft confidential settlement agreement and general release from counsel for the defendants. Importantly, the agreement as proposed by the defendants called for *separate* payments to be made by SDS and SCI.

5. Plaintiff's counsel reviewed the draft and, on March 19, 2020, sent to defense counsel a revised agreement. The revised agreement made certain minor adjustments, including correcting

---

[1] As will be explained, defendant SCI already has provided counsel with a copy of the settlement agreement signed by its representative and has made its settlement payment. As a result, the plaintiffs do not seek to enforce the agreement as to SCI.

the spelling of names and indicating that the necessary 1099 form would be issued by plaintiffs' counsel's firm.  More substantively, but still relatively minor in nature, the agreement was revised to indicate that, pursuant to the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act of 1990 ("OWBPA") and accompanying federal regulations, should a plaintiff sign the agreement within his or her twenty-one day review period as to the agreement, the signature would operate as that plaintiff's waiver of the remainder of the review period.

6.     Counsel for SCI responded the same day expressing his assent to the revisions.  When no response was received from counsel for SDS, on March 23, 2020 a follow-up email was sent asking if counsel for SDS also was fine with the agreement as revised.

7.     With still no response from counsel for SDS, and particularly given the benign nature of the revisions to the agreement proposed by the defendants, on March 24, 2020, plaintiffs' counsel sent an email to defense counsel that advised that he would proceed on the assumption that the revisions also were fine with SDS and would begin collecting plaintiffs' signatures.  The same email advised that, if there was a concern with any revision, counsel for SDS should raise the concern.  To date, over a month later, there never has been any concern raised by counsel for SDS concerning any revision or otherwise with any aspect of the agreement which, in large measure, was as proposed by the defendants.

8.     Plaintiffs' counsel then obtained signatures for all ten plaintiffs and, on March 27, 2020, forwarded to defense counsel the package with the ten signatures in counterparts, as well as a 1099 form.

9.     A term of the agreement provided that the payments would be made by the defendants within the later of either twenty-one days after the last ADEA/OWBPA revocation period, which

the law sets as seven days after signature, or thirty days after the last plaintiff's signature was obtained.

10. The last plaintiff signed the agreement on March 27, 2020. Accordingly, the later of the two periods for respective payments by the defendants was April 26, 2020.

11. On April 6, 2020, plaintiffs' counsel contacted defense counsel to advise that the sixty day settlement order in this case was due to expire prior to the date by which payments were to be made by the defendants. Based upon that sequencing, plaintiffs' counsel advised that a motion to extend the Court's deadline should be filed.

12. A proposed joint motion was circulated on April 9, 2020. Counsel for SCI responded with his agreement as to the joint motion on the same day, also then producing an executed settlement agreement on behalf of SCI.

13. Not having heard from counsel for SDS as to the joint motion, or otherwise, on April 10, 2020, plaintiffs' counsel emailed defense counsel to indicate that, on April 13, 2020, a modified version of the motion would be filed reflecting only SCI's assent to the request.

14. The draft of a partially assented to motion was sent to defense counsel on April 13, 2020. One of the attorneys for SDS then did respond, expressing agreement with a joint motion and suggesting that the Court deadline be moved to May 15, 2020. With that acceptable edit, the joint motion was filed on April 13, 2020 and allowed by this Court on April 14, 2020. *See* Doc. Nos. 119 (joint motion) and 120 (Electronic Order).

15. As the basis for the request, the joint motion noted that, pursuant to the settlement agreement, the defendants had until April 26, 2020 to make their respective payments and that the April 26, 2020 date fell after the sixty day settlement order was scheduled to expire,

necessitating the motion to move the settlement order date.  *See* Joint Motion to Extend Deadline Imposed by Settlement Order of Dismissal, ¶¶ 5-6.

16. On April 15, 2020, plaintiffs' counsel emailed defense counsel reminding them of the April 26, 2020 payment deadline and asking that counsel endeavor to ensure that the payment deadline was met in order to avoid any potential issues of breach.  Counsel for SCI responded on the same day stating that he was following up on the payment issue.

17. By April 28, 2020, *after* the payment deadline already had passed, when no payment had been received, plaintiffs' counsel emailed defense counsel to inquire as to the status.  Counsel for SCI responded on April 29, 2020, indicating that its check was on its way.  Plaintiffs' counsel then again asked counsel for SDS for a status update, an inquiry that went without response.

18. SCI's check was received on April 30, 2020.

19. Also on April 30, 2020, plaintiffs' counsel again emailed counsel for SDS, indicating that the April 26, 2020 date had passed and, with no payment received and no word provided on status, plaintiffs' counsel would be drafting and filing the next day a motion to compel enforcement and would be seeking fees associated with the endeavor.

20. Soon after the April 30, 2020 email, plaintiffs' counsel spoke with one of the attorneys for SDS and then was advised that the issue was being addressed.  In light of the status update provided, plaintiffs' counsel agreed to hold off on filing a motion.

21. On Friday, May 1, 2020, an attorney for SDS advised that the client had been contacted but there was no specific information concerning an update at that point.  Plaintiffs' counsel was advised that there would be follow up over the weekend if necessary.

22. On Monday, May 4, 2020, plaintiffs' counsel was advised by counsel for SDS that the expectation was that plaintiffs' counsel "should have a check by the end of the week."

23.     With no payment having been received, on Thursday, May 7, 2020, plaintiffs' counsel emailed to inquire as to whether the payment still was on track.  No response to the inquiry was received.

24.     Late on the afternoon of Friday, May 8, 2020, with still no further update and no payment received, in addition to not having received a signed agreement from SDS to that point, plaintiffs' counsel again emailed counsel for SDS.  The email advised that motion practice would be necessary unless plaintiffs' counsel received "an affirmative assurance of an exact date within the next few days that [he could] expect both the check and the signed agreement from SDS."

25.     There has been no response received as of today, May 9, 2020.

26.     At this point, it has been approximately two weeks since the deadline by which SDS was to have made its payment.  Despite repeated attempts, first preemptively to ensure acute awareness of the date by which payment was to be made and second to follow up after the deadline passed without compliance from SDS, plaintiffs' counsel still is without the payment from SDS or the agreement signed by its representative.

**II.     ARGUMENT**

This Court has "an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the [C]ourt." *Dankese v. Defense Logistics Agency*, 693 F.2d 13, 16 (1st Cir. 1982) (internal citations omitted).  Where, as here, the material facts are not subject to dispute, it is for this Court to determine whether a contract has been formed.  *See Moore v. La-Z-Boy, Inc.*, 639 F.Supp.2d 136, 140 (D.Mass. 2009) ("[w]hether purported contract contains the necessary elements for enforceability is (ordinarily) a question of law reserved for the [C]ourt." (citation omitted; parentheses in original)).  "All the essential terms of a contract must be [sufficiently] definite and certain so that the intention of the parties

may be discovered, the nature and extent of their obligations ascertained, and their rights determined." *Id.* (citations omitted); *see also Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000) ("It is axiomatic that to create an enforceable contract, there must be an agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement.").[2]

Although plaintiffs' counsel has not been provided with an agreement signed by a SDS representative; *but see O'Rourke v. Jason Inc.*, 978 F.Supp. 41, 45-46 (D.Mass. 1997) ("[a]n oral agreement to settle a claim . . . may be enforced as any other contract."); the agreement that has been signed by ten plaintiffs and SCI is substantively identical, with only benign or ministerial revisions that SDS never has expressed concern with since March 19, 2020, to the agreement that was proposed *on behalf of the defendants* on March 17, 2020. SDS indeed would be hard-pressed to claim that there has been no meeting of the minds with respect to *all* material terms of the agreement when it was the defendants, including SDS, who proposed the material terms that all ten plaintiffs and SCI now have accepted. If more is needed, the relevant history, namely: (1) the representations of counsel for SDS as to agreement with certain terms of settlement before Judge Robertson on February 14, 2020;[3] (2) the March 17, 2020 proposal of a settlement agreement, including the precise terms of SDS' payment obligations as to payment amount and the timetable within which payment was to be made, by counsel for the defendants; (3) the plaintiffs and SCI's subsequent execution of the agreement; and, (4) the entire progression of events as identified in Section I. of this memorandum, all conclusively establish that there is a

---

[2] Section H.1. of the agreement provides that it is to be construed according to Massachusetts law and is enforceable in the state or federal courts located within the Commonwealth.

[3] The settlement terms discussed by Judge Robertson included the total amount of the settlement, but not the breakdown of that total amount as between the defendants. That division was constructed by the defendants themselves and was articulated within the settlement agreement.

binding and enforceable settlement agreement in this matter and, by not tendering its payment as required by the terms of the timetable that the defendants proposed, SDS is in default of its obligations. For those reasons, this Court should order SDS to tender immediate payment in full satisfaction of its settlement obligation and further should direct that SDS immediately provide a copy of the signed agreement to counsel.

Lastly, Section H.10. of the agreement provides a remedy in the event that a party is found to have breached its agreement, including an award of the legal fees incurred for the party harmed by the breach. Beyond the terms of the agreement, this Court otherwise possesses the inherent authority, in the exercise of its sound discretion, to issue an award of attorneys' fees. *See Goodyear Tire & Rubber Co.*, 137 S.Ct. at 1186, 2017 U.S. LEXIS at \*\*11-12 (recognizing that federal courts possess certain inherent powers to manage their affairs, including the ability to assess attorneys' fees when appropriate). Based upon the progression outlined in this memorandum, the plaintiffs suggest that an award of fees to be assessed against SDS is appropriate here and request leave to file a fee petition.

### III.  CONCLUSION

WHEREFORE, for the reasons discussed, the plaintiffs respectfully request that this Court enter an Order directing that SDS immediately provide plaintiffs' counsel with a copy of the agreement signed by its representative and that SDS further immediately provide its agreed upon settlement payment. Pursuant to the agreement as well as this Court's inherent authority, plaintiffs further request leave to file an appropriate petition with the Court seeking an award of the attorneys' fees associated with this matter to be assessed against SDS.

>THE PLAINTIFFS,
>By their attorney,
>
>/s/ Andrew J. Gambaccini
>Andrew J. Gambaccini, BBO #:  654690
>Reardon, Joyce & Akerson, P.C
>4 Lancaster Terrace
>Worcester, MA 01609
>508.754.7285
>agambaccini@rja-law.com

### CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that a good faith attempt to resolve or narrow the issue(s) presented by this motion has been made pursuant to LR, D.Mass. 7.1.  Specifically, on April 30, 2020, the undersigned emailed counsel for SDS advising of the intention to engage in motion practice on the issues of SDS' failure to provide a signed agreement and failure to make the required settlement payment.  Discussions did follow with counsel for SDS concerning those issues, and plaintiffs' counsel agreed to hold off on filing the motion.  When no payment was made by May 8, 2020, plaintiffs' counsel again emailed defense counsel advising of the intention to seek relief from the Court.  This motion follows.

>/s/ Andrew J. Gambaccini
>Andrew J. Gambaccini

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on May 9, 2020.

>/s/ Andrew J. Gambaccini
>Andrew J. Gambaccini